Thank you. Mr. Hollander, whenever you're ready. Good morning. May it please the court. Larry Hollander, Hollander Law Group, on behalf of Petitioner Appellant. We submit to this court that this is a very unique arbitration case. It is not your run-of-the-mill, sour grapes arbitration case where a party is alleging that the underlying determination was wrong. We have two arbitration awards. We find no case law in this circuit. We find no case law in any other circuit addressing a similar type of case, with the exception of Union Collective Bargaining Agreement decisions, which generally have 30 pages of arbitration procedure. The normal case before a court involving more than one decision would be decisions within the same arbitration, interim awards, partial awards, things like that. We have two awards here from two separate arbitration panel and arbitrators. The word for the day, however, is contract. We have two sophisticated parties who settled an insurance claim for a lot of money. They reached a settlement agreement which they agree is clear and unambiguous. Regardless, an arbitration panel got a hold of it and rejected the very terms of the agreement and effectively modified it. In the settlement of the claim— How does it effectively modify the global settlement? I mean, isn't the decision here, the one that you're appealing here, just an interpretation of what that settlement was and how that should be construed for purposes of interpreting the insurers? The answer is no, Your Honor, and I will explain why. What's referred to as the interim arbitration award by the single arbitrator against the concrete companies, which was the big case, there are specific findings by that arbitrator. The critical finding of which the parties to this action agreed to be bound and to be the biblical determination unequivocally says that BMNY, Flintlock Appellant Subcontractor, did not breach the underlying subcontract agreement. They were therefore not liable to my client who was partners with the insurers to split the cake. If there was any proceeds. Regardless of that unequivocal and clear determination, a later panel, the second panel, said there was no award. They acted outside their authority. The interim award by contractual agreement by the parties, and let's be frank, the case law in this circuit and across the country in state and federal courts is that two parties who contractually agree to procedures and substantive matters regarding an arbitration is absolutely enforceable, overriding almost every statutory law, whether it's Article 75 of the CPLR or whether it's under the Federal Arbitration Act. Commending both of us, we're crystal clear in what the agreement said when we drafted it. We are bound by this underlying decision. The decision, Your Honor, in direct answer to your question says BMNY is entitled to the payment of their retainage. Excuse my tongue. Regardless, a second panel came in and in clear and unequivocal language said there was no award of the retainage. Can we read? What could be clearer, Your Honor? This was not an interpretation. There is no alleged ambiguities in any language used. None. Zero. So you have before you an arbitration award that we are seeking to vacate, whereby the foundation of the interpretation of the waterfall provision cutting of the pie was based on the findings of that underlying arbitration. So if you go to the finish line, there's no dispute that the waterfall provision between the parties to this action was 55-45 in round numbers. When you're done with the math, after the second panel got done with the award, my client got 10%. What happened? How can that happen? There is only one way that that could happen, because the second panel, despite the first arbitrator determining there was no breach by BMNY and they're entitled to their retainage and damages, the second panel said the exact opposite. This issue was not before then. Well, BMNY had assigned all of its interests and its claims against the contract suppliers to Flintlock, right? Correct. For procedural purposes, yes. And so then any recovery would have been Flintlock's, right? No, not for a retainage breach of contract. They subsequently contracted around that, and the arbitration panel found that that was any recovery that should have gone to Flintlock in the assignment. I mean, I understand you disagree with it, but why is that irrational? That doesn't strike me as— Your Honor, I respectfully disagree with the statement you just made. That's not what was found. The second panel, if you're talking about that side agreement that was done between Flintlock and BMNY regarding other damages on the job, they didn't even rely on it. If you read the arbitration award, they mention it and specifically say they're not relying on it. So I respectfully disagree with the statement that you made, because that was not the finding. They specifically said in bold letters there was no award of the retainage. But in furtherance to respond to your answer, your question, Your Honor, and why I said no to both facets of your question, if you take a look at the award, the recovery that BMNY received was under a determination that they had not breached the contract. That is not an assignable claim to Flintlock. If you look at the assignment, the assignment deals with what if Flintlock recovers against BMNY. Now, I'll interject here. The underlying decision, the interim award, holding that BMNY was not in breach but the concrete suppliers were, we believe that's confusion in this case. It doesn't make sense legally. BMNY was our sub. They're the ones who unequivocally hired the concrete contractors. Flintlock had no privity. That's why we did the assignment. We apparently hit it out of the ballpark and proved 100% how defective the concrete was, and the arbitrator determined somehow that our subcontractor was not breaching the contract. Did I agree with that determination? Do we agree with that determination? Absolutely not. I submit it makes no sense whatsoever. And I submit to this court that that's the reason we're standing here because three lawyers on the panel looked at it, and you have the evidence in front of you. You saw the oral argument that went on where they constantly questioned me about this, and I just said, gentlemen, we are bound by the award both by law and contract. Why are you asking me these questions? Why is it relevant? They pounded it, and in their decision, they straight out said and reversed it. Now, I hope I've answered your question, Your Honor. An interesting twist here is respectfully to the lower court what the lower court did with this. The lower court did two, we would argue, unusual things. Over time, so you can wind it up briefly. You can continue, but just be mindful of that.  Sure, Your Honor. The court addressed the agreement that Your Honor just addressed, the side agreement in her decision. There was no such reference in the underlying award. The court went outside of the award and reassessed it, even though neither party argued that that was relevant. I want to just finish with a hypothetical to the court regarding this side agreement which Your Honor has raised and which I submit to this court has caused confusion in this case. Under the settlement agreement with the insurance company, my client had the absolute right to keep BMNY on the job on a moving forward basis. My client accepted the risk of any future damages, released the insurance company completely, completely. There was additional damages later on. If Flintlock had not used the opportunity of the recovery of its success in this underlying action to resolve those claims which are not part of the recovery action and had nothing to do with the insurers, what if we paid Flintlock all the money right then and there, started a lawsuit the next day, and three years later I won the case and I get back the $5 million? Putting aside if I could ever collect it, would the carriers be entitled to that as part of the recovery action? Absolutely not. And I think that speaks to the procedural problem here and why this case is a unique case because we all know the difficult standard of vacating an arbitration award and we acknowledge that, but we submit this as a unique case on the facts that would allow this court to vacate this judgment. I thank you very much for your time. Thank you, counsel. Mr. Friedman. Good morning and may it please the court. My name is Adam Friedman. I represent the respondents. As counsel for the appellant just mentioned, there is an extremely high bar to vacating an arbitration award. This court has said the power to vacate an arbitration award is strictly limited. The party moving to vacate an award has a heavy burden of showing that the award falls within a very narrow set of circumstances. There is extreme deference shown to an arbitration award, and most importantly, arbitrators need only a barely colorable justification for the outcome reached. We do not believe that there is a reasonable basis for any conclusion. The arbitrators here did not have a more than barely colorable basis for reaching the decision that they did. And there's no reasonable argument that the arbitrators exceeded their authority, and we don't believe that it is a close call. After settlement of the recovery action, quote, recovery action as defined in our settlement agreement, the appellant had $8 million more than it did before the recovery action, and we don't believe that there is a reasonable view of the record that supports the conclusion, that there was no reasonable way the arbitrators could have concluded that that $8 million, more than $8 million, was governed by the, what we call the waterfall provision of the party settlement agreement. Why did you subtract the $225,000 payment to the MNY? I mean, it seems like an all or nothing proposition to me, but you did that, and so that makes me wonder what's going on. We elected not to fight about it. That's all it was. You're right. We were entitled to all of the money, with the exception of the $349,000 that related to another project. We were entitled to share all of that money. But we decided, let's simplify it, and okay, you're going to give BMNY $225,000, okay. It cooperated in the arbitration, or whatever the justification is. We just decided not to fight about it. If we do, if one assumes that the interim award granted retainage damages, then does that suggest that the arbitration panel partially vacated the interim award? No, I don't think it does, Judge. I think that the key issue here is that the appellant took all of the money back, that the resolution of the recovery action wasn't simply we're going to give BMNY its retainage because the interim award awarded BMNY its retainage, but at the end of all of the settlement negotiations and agreements, Flintlock took the money back. And at the end, they had $8.1 million more than they did before the settlement of the recovery action. And the resolution of the recovery action, the claims for which Flintlock took that money back, did not relate to the defaults of BMNY, which were the subject of the original plan against my client's insurance policy. There were multiple defaults under various subcontracts along the same project. And what they are doing by attempting to apportion money to BMNY is hold us liable for damages that we resolved in the settlement agreement for $9.2 million when they reduced the amount of recovery to which they're entitled there. It's the same effect as if we had to pay for more losses that Flintlock incurred as a result of BMNY's defaults. So if Your Honors don't have any further questions, we will address in our brief and ask that the lower court's judgment be affirmed. Thank you. Thank you, Counsel. We'll hear about it. Just very quickly addressing Counsel's statement. Record A-1039, BMNY is entitled to payment of its retainage. That's the arbitration holding. We did not address res judicata in the direct argument. Res judicata expands the concept that the contract between the parties is enforceable. The insurers have tried to distance themselves separate from Flintlock in connection with the subrogation recovery here. Under the policy, the insurer would normally, like any other insurance claim, go sue any parties under subrogation that they believe may be actually liable for the damages. The fact that Flintlock agreed in the settlement agreement to prosecute those claims made us partners. The standard of res judicata, which would bind the insurers as it does Flintlock to the underlying decisions, we cite at page 39 of our brief, Watts v. Swiss Bank. The language in there is critical as to why res judicata on top of contract enforcement should vacate this judgment. Res judicata applies to those, and I'm quoting from the brief at page 39, those whose interests are represented by a party to the action and possibly co-parties to a prior action. Flintlock, in fact, was representing both itself and its partner, the insurers, in this subrogation claim. It couldn't be simpler as a matter of both contract and the law of res judicata. Both parties are bound by the interim award, and in fact, the second panel is bound by it as well. If they changed one word of it, they exceeded their authority, breached the underlying agreement between the parties, and that arbitration award should be vacated or, as Your Honor highlighted with respect to the retainage, perhaps just the retainage should be partially vacated. Thank you again for your time, Your Honor. Thank you, counsel. Thank you both. Thank you. Case under advisement.